## RAMOS v. ORCASITAS.

### APPEAL from District Court of San Juan.

No. 141.—Decided February 6, 1908.

STATEMENT OF THE CASE.—Where amendments to a statement of the case are offered and accepted by the judge, then the document should be rewritten including therein all of the amendments accepted in order that it may be complete in a single document.

RECORD OF TITLE—PARTITION AND AWARD OF THE PROPERTY OF PREDECESSOR IN INTEREST.—It is not necessary in order to obtain the admission to record of a possessory title obtained in proceedings to establish possession, subsequently acquired by inheritance, to effect the partition and award of the property of a predecessor in interest, nor is it necessary that the rigths of each heir be determined.

DOUBLE SALE OF PROPERTY—NULLITY OF ACTS AND CONTRACTS RECORDED—THIRD PARTIES.—Acts and contracts cannot be annulled to the prejudice of a third party having his rights recorded, by the double sale of property, where one of such sales has not been recorded.

ID.—NULLITY OF SALE—GRANTEE.—The question whether or not an heir has conveyed the properties of his predecessor with all the proper formalities cannot be raised by a mere grantee who is neither a coheir nor a creditor, and the determination thereof, whatever it may be, involving mere possessors, cannot affect the rights of a third party contracting for a valuable consideration with the person in whose favor the same was recorded in the registry.

ID.—CASE IN WHICH A TITLE FIRST TO BE RECORDED BY VIRTUE OF A DOUBLE SALE IS A TITLE OF POSSESSION.—When the title of a property is in dispute be-

tween the person in whose favor it is recorded in the registry and one who
has failed to obtain admission of his title to record, even where the recorded
title is one of possession, the former is entitled to his record unless the latter
presents a title of ownershi pwhich is preferential.

The facts are stated in the opinion.

*Messrs. Ginorio & Enevillas* for appellant.

*Mr. Manuel F. Rossy* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

In this case the court rendered a written opinion which, for a proper understanding of the case, we will quote in full. It reads as follows:

The court, after taking into consideration the allegations, the testimony of the witnesses, documentary evidence, and the oral and written arguments of the parties, reaches the following conclusions:

First. On April 11, 1880, Pedro Rodríguez Castro died in Río Piedras and on the 16th of May, 1884, intestate proceedings were commenced by Solicitor José Manuel Rossy y Guerra, in the name of José María Candelario and María Paulina Rodríguez Castro, sisters of the deceased, and, as a consequence of said proceedings two properties were seized, one consisting of 180 *cuerdas,* situated in Sabana Llanas, a *barrio* of Río Piedras, near the San José Laguna, bounded as follows: José Melitón, Francisco Caso and Juan Rubín, and the said property was placed in charge of Manuel Falú, the seizure of the property having occurred on October 14 of the said year, and delivered to Falú on the 12th of the following month.

Second. On the 29th of May, 1884—that is to say, a few days after the intestate proceedings were commenced, but prior to the seizure of the property—Florencio Berrios commenced proceedings to obtain a possessory title to a parcel of land composed of 180 *cuerdas,* bounded on the east by Melitón and Manuel Falú, on the west by Augustina García Cruz, and on the south by Francisco Caso, who stated that he had

acquired from Pedro José and José Rodríguez, the heirs of Pedro José Rodríguez, in the year 1881.

The possessory title was granted and recorded in the registry of property, and the land was thereafter sold in the year 1901 to Pío Prieto, one of the defendants, who, through his attorney, appeared in the complaint herein, stating that he admitted the facts therein alleged and that he had no interest therein whatever, because, although the property still remained recorded in his name, the money which he paid therefor had been returned to him, and he consented to have judgment rendered against him.

Third. In the course of intestate proceedings, prosecuted by Pedro Rodríguez Castro, an order was made on March 10, 1885, declaring the heirs to be the brother and sister, José María and Paulina Rodríguez Castro, who appeared in the application filed by their solicitor as José María Candelario and María Paulina.

Fourth. For the payment of the costs of these proceedings, an attachment was levied on the 31st of July, 1890, on the property above described, consisting of 180 *cuerdas,* bounded as follows: On the north, Manuel Falú and Melitón Rivera; on the south, Jacinto Fajardo; on the east by the Estate of Francisco Caso, and on the west, that of Juan Rubio, Domingo García Polavieja being appointed custodian of the attached property which, having been offered for sale at public auction, because of the fact that no bidders appeared, was awarded to Francisco Ramos Latourt, the plaintiff herein, to whom a judicial deed was issued on the 16th of April, 1895.

Fifth. Several months after the commencement of the intestate proceedings of Don Pedro Rodríguez Castro, on November 20, 1884, Manuel Falú was appointed custodian and administrator of the property, composed of 180 *cuerdas,* of which mention has been made.

Sixth. On June 7, 1887, two years after the order declaring Paulina and Candelaria Rodríguez Castro to be the heirs,

they appeared, through their attorney in fact, Bartolmé González Estradas, in the municipal court of Río Piedras, and commenced proceedings to obtain a possessory title to a property consisting of 100 *cuerdas,* bounded on the north by the Estate of Juan Rubin, on the south by that of Francisco Caso, on the east by Manual Falú, and on the west by Jacinto Santos.

They stated that they had acquired the property by inheritance from their brother, Pedro José Rodríguez Castro, in the year 1885, from which date they had possessed the same in their own name and under title of ownership, without opposition from any one, paying the taxes thereon. The said possessory title included another property, composed of 70 *cuerdas,* which will be disregarded in this opinion because it is not subject to the decision in this case.

Seventh. The certificate attached to the application above mentioned certified that the Estate of Pedro José Rodríguez paid the taxes on the 100 *cuerdas* of land.

Eighth. During the course of the proceedings to obain possessory title, prosecuted by the Rodríguez Castro sisters, Manuel Falú was summoned as an adjoining property owner and on August 10, 1889, the municipal court of Río Piedras entered an order, approving the application of the petitioner, declaring possessory title to be in their favor, without prejudice to third parties, and ordering the same to be recorded in the registry of property, which was done on June 14, 1890, in volume 69 of the 6th archive of Río Piedras, folios 224-248, of property 301 and 302, first inscription, which also included the other property, consisting of 70 *cuerdas.*

Ninth. Manuel Falú brought an action to recover a debt against the two sisters above named, as the heirs of Pedro Rodríguez Castro, and on June 8, 1893, execution was issued against the said property as also against the 70 *cuerdas* before mentioned; and on October 23 of the same year, as a consequence of said proceedings, and at the instance of Falú, the

property consisting of 100 *cuerdas* in Sabana Lllanas, bounded on the north by the Estate of Juan Rubin, on the south by that of Francisco Castro, on the east by the property of Manuel Falú, and on the west by Jacinta Santos, was attached as the property of Candelaria and Paulina Rodríguez Castro.

Tenth. By virtue of these proceedings, on December 20, 1901, the 100 *cuerdas* property was awarded to Manuel Falú, who caused the award to be recorded in the registry of property; and on November 28, 1904, he sold the property to the present plaintiff, Luis Orcasitas Muñoz, who likewise recorded his title at folio 171 of volume 13 of Río Piedras, third record.

Eleventh. The defendant, Luis Orcasitas, filed a complaint in which he prayed that Manuel Falú be required to protect him against eviction, and the said Falú having appeared, prayed that the complaint be dismissed in so far as he, Orcasitas, was concerned.

Twelfth. The property, composed of 180 *cuerdas,* which was seized in the intestate proceedings, and bought by the plaintiff, Francisco Ramos Latourt, is the same property involved in the possessory title proceedings, prosecuted and recorded by Florencio Berrios, and later sold to the present defendant, Pío Prieto, is likewise the same property which, under another proceeding to secure possessory title, the Rodríguez Castro sisters recorded in their name and which was bid in by Manuel Falú, and by him sold to the defendant, Luis Orcasitas, although in this latter proceeding to obtain a possessory title, it is stated that only 100 *cuerdas* is the area of the property instead of 180 *cuerdas,* and although the three descriptions differ with respect to the adjoining property of Jacinta Fajardo, which, in another description, appears to belong to Augustina García, and in still another to Jacinta Santos, because it has been shown that the former and the latter are one and the same person, although known by both sirnames, and that Augustina García was placed in charge of the adjoining property by Santos Fajardo.

POINTS OF LAW.

First. As we have heretofore stated, the property awarded to Ramos Latourt, the plaintiff, by virtue of execution against the property of the intestate Pedro José Rodríguez, for the payment of costs, is the same property as that recorded in the name of Pío Prieto under possessory title secured by Florencio Berrios covering the same number of *cuerdas* and also the property recorded in their name by vitrue of another proceeding to secure possessory title by the Rodríguez sisters, as heirs of Pedro José Rodríguez, although it appears in the record of those proceedings to have consisted of 100 *cuerdas* which was subsequently bid in by Manuel Falú and awarded to him and which at present belongs to Luis Orcasitas by virtue of purchase. Florencio Berrios recorded his possessory title and Pío Prieto the purchase thereof. The Rodríguez sisters also recorded their possession of the 100 *cuerdas* as likewise Manuel Falú the award made to him, and Luis Orcasitas the purchase from Falú. The only person whose title is not recorded is the defendant, Francisco Ramos Latourt.

Second. In regard to Pío Prieto Elias the court will not consider the matter with respect to him, inasmuch as he signified his willingness that the record which appears in his name in the registry of property should be canceled.

But this is not the case with respect to Luis Orcasitas, who is defended by his vendor, Manuel Falú, opposing the cancellation of the record, and this is the point which the court must decide with respect to him, whether the complaint should or should not be sustained.

Third. The possessory title of the Rodríguez sisters, recorded in their names as well as two other records, one in favor of Manuel Falú, and another in favor of Luis Orcasitas Muñoz, as opposed to the title of Francisco Ramos Latourt; and in order to decide the question in controversy, it is nec-

essary to determine whether the plaintiff's title is superior to the title of the defendant, Orcasitas.

Fourth. Although, in a deed executed by the judge, in the name of the heirs of Pedro José Rodríguez, and in favor of Francisco Ramos Latourt, it is made to appear that the full ownership of said property was conveyed to them, the truth is that the necessary facts have not been set forth in order to determine whether or not Pedro José Rodríguez, from whom the property was acquired, really enjoyed the ownership thereof, or whether he only had the possession of the same. No evidence whatever has been presented on this point to show that the predecessor in interest, Pedro José Rodríguez, enjoyed the ownership thereof, and the judge could not convey nor did he convey to Francisco Ramos Latourt anything more than he had, which was possession; and under this view, the title of Francisco Ramos Latourt, although it is stated to be a title to ownership, cannot be so considered, but it is only a possessory title and cannot be regarded as a title of ownership, so that, on the one hand we have a possessory title in favor of Francisco Ramos Latourt, which is not recorded and, on the other, a possessory title in favor of the Rodríguez sisters, the heirs of Pedro José Rodríguez, recorded in the registry after each successive conveyance, the latter in favor of the defendant, Luis Orcasitas Muñoz.

Fifth. Notwithstanding the fact that a record does not validate acts or contracts which, according to law, are null and void, nevertheless, according to article 34 of the Mortgage Law, acts or contracts executed by persons appearing from the registry to have a right so to execute them, cannot be invalidated with respect to a third party after they are once recorded, although the right of the grantor be annulled by virtue of a superior unrecorded title or causes which do not clearly appear from the registry, this rule being subject to the exception contained in the last paragraph of said article, to the effect that it shall never be applicable to a recorded pos-

sessory title, unless the record shall have validated and secured the right to which the title refers.

So that the record of possession, even in regard to a third person, will not prejudice another party who has no recorded title, if he has a superior title. If Francisco Ramos Latourt had a dominion title, Luis Orcasitas Muñoz could not allege the fact that he was a third person to prevent his record from being invalidated because the former would have a better right or superior title; but as the plaintiff only has a possessory title, the record cannot now be annulled.

Sixth. So then Francisco Ramos Latourt not having a preferential title to that of Luis Orcasitas Muñoz, we must follow the provisions of section 1473 of the Civil Code, in force at the time the facts occurred, with respect to cases of double sale, and which require that, although where real property is sold to different purchasers, it will belong to the person acquiring same who first records his title in the registry. Therefore, Manuel Falú and Luis Orcasitas, having first recorded their title, the record thereof must subsist to the prejudice of the other purchaser of the same property, Francisco Ramos Latourt, who has not yet recorded his title.

Seventh. An analogous case, almost the same, was decided by the Supreme Court of Spain in its judgment of June 3, 1899, affirming the judgment of the *"Audiencia Territorial"* and that of the court of first instance, wherein the same legal principles were announced, identical to the judgment of said court rendered April 14, 1898.

For the reason stated the court holds that the facts and the law are in favor of the plaintiff, Francisco Ramos Latourt, in respect to his claim against the defendant, Pío Prieto, by reason of the acquiescence of the latter and his consent that the entry appearing in the registry of property be canceled, and against the plaintiff and in favor of the defendant, Luis Orcasitas defended by his vendor, Manuel Falú, the said defendant being entitled to judgment dismissing the complaint

with respect to him, as to the 100 *cuerdas* recorded, with the costs caused by the defendant, Orcasitas, and his codefendant Falú, and an order of execution will issue for the enforcement thereof. The secretarty is ordered to enter judgment in accordance with this decision.

The above-named plaintiff filed a complaint alleging substantially the same facts as those hereinbefore set forth against the defendants therein but demanding the annulment of the possessory proceedings prosecuted by Florencio Berrios and Candelaria and Paulina Rodríguez Castro, as also all of the acts derived therefrom, and in consequence thereof the annulment of the records entered in the registry of property, and declaring the plaintiff, Francisco Ramos Latourt (now Juana Ramos of the same sirnames), the sole owner in full ownership of the property consisting of 180 *cuerdas,* which formerly belonged to Pedro Rodríguez Castro, and that it be ordered that the deed to the said property executed by the judicial authority on April 16, 1895, be recorded in his name in the registry of property with the costs against the defendant.

The said complaint was answered by Manuel Falú, who was cited to appear and defend Luis P. Orcasitas Muñoz against eviction, and he therein contested all of the claims of the plaintiff in so far as the same affected his rights.

The trial having been had and the evidence heard, judgment was rendered on December 11, 1906, in conformity with the opinion of the judge herein set forth, judgment having been entered on the 12th of said month, and from this judgment an appeal was taken on the 26th of the said month and year.

In the judgment roll which we have before us, there appears a statement of the case duly approved by the trial judge. This statement of the case does not conform to the practice which we have several times recommended. We have heretofore said that where amendments are presented to this class

of document, and such amendments are accepted by the opposite party and by the judge, a new statement should then be drawn including the facts presented by the appellant and the amendments accepted and not, as in this case, where amendments accepted by the defendant come up in a separate document, which renders a proper consideration thereof very difficult; but we will not, for this reason, fail to consider the case on its merits, and the facts as proven.

The parties have filed their briefs in this Supreme Court and made oral arguments at the hearing in support of their respective contentions upon the matters in controversy.

The voluminous record and the lengthy brief justify the delay in the final disposition of the case.

Of course, in this appeal we must disregard everything that concerns Florencio Berrios, the vendor of the property to Pío Prieto Elias, because he acquiesced in the complaint during the course of the proceedings.

As held by the trial judge, we have before us a case governed by the provisions of section 1473 of the old Civil Code, equivalent to section 1376 of the Revised Code, and now in force in Porto Rico. That is to say, a double sale of a real property is here involved with the circumstances that the possession thereof is recorded in favor of a third person.

In the case of a double sale it is presumed that one person has sold the same thing twice, and here it clearly appears proven that Paulina and Candelaria Rodríguez Castro sold the property in question to Ramos, and that in the name of those same persons, the same property was awarded to Manuel Falú, in executory proceedings prosecuted against them for the recovery of the debt contracted in their favor by Pedro Rodríguez Castro, of whom they, as sisters, were declared to be the heirs.

We have said that one and the same property is involved, although the one judicially conveyed to Ramos consisted of 180 *cuerdas* and the one awarded to Falú consisted of 100

*cuerdas,* but we are bound to make this affirmation by the complaint itself, and the questions raised in the controversy cannot be changed as is done in appellant's brief.

In the eighth allegation of the complaint, it is averred that the property sold to Ramos is the same one recorded by Florencio Berrios, and which he subsequently sold to Prieto, and that a part of that property belongs to the 100 *cuerdas* recorded by Candelaria and Paulina Rodríguez and which, by successive conveyances, passed into the hands of Falú and Orcasitas.

If it is not the same property how is it that Ramos, claiming the 180 *cuerdas,* Pío Prieto having acquiesced in the complaint herein, it is sought to recover the same 180 *cuerdas* sold to him by Florencio Berrios, he continues to take steps against Orcasitas to obtain the 100 *cuerdas* recorded in favor of the latter? This is incomprehensible unless they all form the one property sought to be recovered.

In other words 100 *cuerdas* were judicially sold to Ramos and 50 *cuerdas* more, and the said 100 *cuerdas* were also sold to Falú, and this property is the one involved in this litigation.

The appellant makes the objection that his is a dominion title because, in the deed of April 16, 1895, it is stated that the ownership thereof is conveyed to him, and he alleges the preference of his title over subsequent titles recorded in the registry of property. It nowhere appears that Pedro Rodríguez Castro held the ownership of the property in question, and if this is so neither could his heirs, in whose name the property was sold under a deed executed to Ramos, have held the ownership thereof, and, on the other hand, if the heirs found it necessary to prosecute proceedings to obtain a possessory title and record the possession thereof in the registry, we must indulge the presumption that the said Pedro Rodríguez Castro only held possession of the property, which was all that the court could convey to Ramos in the judicial sale re-

ferred to in the deed aforesaid, executed in the name of the heirs, Paulina and Candelaria Rodríguez.

Furthermore, in the answer to the complaint, the ownership was not acknowledged, but all of the facts alleged in the complaint were generally denied and especially those facts in opposition to or in contradiction of those set forth in the answer, so that the question of ownership was virtually adversely disposed of and thereupon the burden was on the plaintiff to prove ownership, and there is no evidence in anywise tending to prove this fact.

So then, Ramos holds a possessory title which is not recorded as against recorded possessory titles.

The appellant maintains that the proceedings to obtain a possessory title, brought by Candelaria and Paulina Rodríguez Castro are null and void, and bad faith on their part is spoken of because they could not sell that which they did not possess, and because they confused the boundaries in order to be able to record their title in the registry. But it must be borne in mind that the only thing they did was to record their right, and, thereafter, Manuel Falú attached the property so recorded, in proceedings to recover a debt contracted by Pedro Rodríguez Castro, and, therefore, the property attached was awarded to him in those proceedings.

From such an attitude on the part of Paulina and Candelaria no malice can be inferred to have existed to the prejudice of Ramos, because they were declared to be the heirs of their predecessor in interest on March 16, 1885, they brought the proceedings to secure possessory title on June 7, 1887, recorded their possessory title on June 14, 1890, and the property was awarded to Ramos on April 14, 1894.

In view of the dates on which these various acts were performed, which were very much prior to the steps taken by Ramos, they cannot be considered to have foreseen, even remotely, that, after several years, Ramos would acquire rights in the property in question.

This being so we must reject any charge of malice or confusion of boundaries, for the purpose of causing injury to Ramos, who at that time could not have foreseen results which occurred long afterwards.

It was not necessary that the property of Pedro Rodríguez Castro should have been first divided and awarded, nor was it necessary that the rights of each of the heirs, Paulina and Candelaria, should be first determined because the record of a hereditary title was not involved, but the mere fact of possession, which was proved in the proceedings above mentioned.

On the other hand the annulment of those proceedings to obtain possessory title which is sought could not affect the contract of loan entered into by Manuel Falú and Pedro Rodríguez Castro, much less could it affect the validity of the foreclosure proceedings or of the public sale and award made in favor of Falú for the recovery of his credit which was the tie connecting him with the heirs, Paulina and Candelaria.

And from all this we likewise fail to see the bad faith attributed to Falú unless it might be the fact that he was the trustee in the intestate proceedings of Rodríguez Castro, his efforts therein, and the fact that he was cited as an adjoining owner to appear when possession was taken of the property judicially sold to him; but this in itself is not sufficient because none of these acts are related to the proceedings to obtain possessory title brought by Paulina and Candelaria Rodríguez. It would be necessary to show that bad faith had been practiced in these proceedings, that the contract between Rodríguez Castro and Falú was fraudulent, and that the latter took part in all of those acts maliciously assisting in carrying them into effect.

On the other hand in accordance with articles 36 and 38, subdivision 4, of the Mortgage Law, acts and contracts to the prejudice of a third party, who has recorded his right,

cannot be annulled "by reason of a double sale of a thing when one of them has not been recorded."

It cannot be denied that the defendant, Luis P. Orcasitas, is a third party in this case, and the Supreme Court of Spain, in its judgments of December 20, 1904, and March 23, 1906, in a case which, although it is for the rescission of a contract, has said:

"That the contracting parties cannot be required to make a legal search as to the condition of the properties recorded, and that causes for rescission, in order that the same may prejudice a third person in such a case, whether they emanate from the law or from a desire of the parties, must appear in the registry."

It will thus be seen that these questions, based on the provisions of the Mortgage Law, which is a safeguard to real property in all of its different respects, are treated with the most scrupulous care.

It is true that Q. Mucius Scevola in his *Jurisprudencia del Codigo Civil* says: "That without an honest intention, the prize awarded by the provisions of article. 1473 of the Civil Code to the first of two purchasers of the same realty who reaches the registry of property, cannot be obtained."

We respect that opinion because it is moral, but it does not appear from the record herein that those who first reached the registry in this case were not acting with honest intentions.

Moreover, the judgment of the Supreme Court of Spain, of June 3, 1899, cited by the judge in his opinion is conclusive and reads:

"The questiton as to whether or not the son of a debtor sold under the necessary external solemities the properties possessed by his predecessor, has not been raised by the appellant, because he had no right of action so to do since he is neither a co-heir nor a creditor but a mere bidder to whom the property was awarded, and the determination thereof,

whatever it may be, as they are all mere possessors, and in view of the provisions of paragraphs one and three of article 403, and of paragraph one of article 34 of the Mortgage Law, could not affect the third party who contracted for a valuable consideration with the person in whose name the property was recorded in the registry of property."

That judgment absolutely denies to the appellant, Ramos, now Juana Ramos, a right of action to attack the sale made by Paulina and Candelaria Rodríguez of the property possessed by their predecessor in interest, for the same reasons on which that judgment is based, and because in any event, whatever the decision might be in the matter it could not affect the third party, Orcasitas, according to the provisions of paragraphs one and three of article 394, and paragraphs one and three of article 34 of the Mortgage Law, in force in Porto Rico.

In conclusion. Article 1473 of the old Civil Code which is equivalent to article 1376 of the Revised Code in force in Porto Rico, in its second paragraph reads:

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry."

The judgment hereinbefore quoted from of June 3, 1899, reads:

"In the controversy as to the superiority of title to a property between a person whose title is recorded in the registry of property and one who has not been able to secure admission of his title to record, even where the recorded title is one of possession, the former must prevail unless the latter produces a title of ownership which is preferential in character."

This is precisely the case. One and the same property was sold to Falú and Ramos. Falú recorded his possessory title in the registry of property and Ramos failed to obtain his record, or has not shown a title of ownership of a preferential character.

This being so, this appeal must be decided in favor of the respondents and defendants because the Judge of the First Section of the District Court of San Juan correctly applied the law, and, as has been shown in this opinion, did not commit any of the errors alleged by appellant.

Therefore, the judgment rendered on December 11, 1906, must be affirmed with the costs against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, MacLeary and Wolf concurred.